Good morning. For the record, I'm John Rhodes from the Missoula Office of the Federal Defenders of Montana, and I represent Violet Bruce. It's clear from Your name is John Rhodes, is that correct? Correct, Your Honor. I have a different name on the list here. Thank you. We submitted a notice of substitution of counsel on March, sorry, February 25th, but I think it went to San Francisco instead of Seattle. All right. Very good. Thank you. Per this court's decisions in James and Bronshaw, it's clear that Indian status isn't an element of an offense under Section 1153. Despite that fact, the district court here relied on the court's decision in Hester and imposed what the district court called a burden of production on the defense to establish Miss Bruce's Indian status. Well, the two statutes are structured quite differently. And we've said that 1153, the way the statute is written, means that it must be charged and indicted and approved. Whereas 1152, we have said, makes Indian status an exception. The defendant has to put into play at least, and then the government bears the burden of proof beyond a reasonable doubt if the issue is adequately put into play. Two responses to that, Your Honor. First, you summarized the Hester case. In Hester, the defendant did not make his Indian status an issue either before or at trial. Here we did it clearly in motions to dismiss before trial and at trial. Second, I believe Hester is no longer good law given the Supreme Court's decisions in Apprendi and then also in Jones, which basically followed Apprendi, where it basically revitalized the importance of elements in criminal prosecutions. So you still have to have enough of a showing as a matter of law to sustain a verdict in your favor. If it's a jury question, which I'm not sure it is, but let's assume it is. I would agree with that, Your Honor. What the district court did here was impose what it called a burden of production on the defense. I really think it should have been under Hester a burden of pleading. Hester doesn't talk about production, yet that's what the district court called it. Then, instead of adjudicating the standard as a burden of production, it adjudicated it as a burden of persuasion. We clearly supplied enough evidence under the governing case law that Ms. Bruce is an Indian. Most importantly, we showed that she spent her entire life on the reservation. She had Indian blood. She socialized. She was accultured as an Indian living on the Fort Peck Indian Reservation. She was not enrolled, which everybody recognizes is the most important factor. That can be a She was not recognized by a federal or tribal governmental agency for purposes of benefits. I disagree with that, Your Honor. If you look in the PSR, she has been treated by Indian Health Services. She also mentioned that at sentencing. So she's been recognized by a government agency as an Indian. Also, Your Honor, a great Counsel, the PSR lists her race as American Indian. Is that self-reported or was that somebody else's assessment? I wasn't at the PSR interview. Most likely that's a question. That's asked by the probation officer. That's her self-identification. Based on my experience, that's how it always works in every case I've been involved in. Here also, with respect to the tribe, after this incident where she choked her son, the tribe took her kids away from her. The tribal court did that. Also, in 1991, when she was a juvenile, the tribe, with the case agent in this case sitting as a tribal judge, adjudicated her to a mental health commitment, and in that adjudication said that once the mental health treatment was done, she was to become a ward of the tribe. So the tribe has recognized her both as a youth and in this case as a member of the tribe who it can assert jurisdiction over. Is she eligible for enrollment in any tribe? That's unclear, Your Honor. Her mother is enrolled at Turtle Mountain, which is a Chippewa Cree tribe in North Dakota. We're dealing with the Fort Peck Indian Reservation with the Assiniboine and Sioux tribes. It may be that she's eligible for enrollment, but that's unclear from the record. Is she eligible for enrollment in Oklahoma? I don't know the answer to that. She was born in Oklahoma but immediately went to Montana and basically spent her entire life on the reservation. And getting back to Judge Reimer's point regarding enrollment, we agree she's not enrolled. At the same time, that's not the end of the inquiry. Particularly under this court's case in Duro, which was reversed by the Supreme Court but then reinstated by Congress in what's commonly known as the Duro fix, you look at the person's socialization and also with their affiliations with the tribe. And here we showed repeatedly that in terms of her life experience, it's been as an Indian and the tribe has treated her as an Indian. And I'm going to emphasize again the fact that the case investigator who initially suggested this case should be indicted as an 1153 action was the judge that declared her award of the tribe. Well, that just doesn't do much for the district board, I doubt it does much in any event. We have no facts about that proceeding at all. She maybe didn't challenge jurisdiction. Her mother was enrolled at the time. A whole lot of things could have explained that, just like a whole lot of things can explain the tribal taking custody of her children because they were enrolled. It doesn't go to showing she was recognized. What it does say is that she was to become a ward of the tribe. That's what it says in the order. The court can make of that what it will. What would happen if she were charged under 1153 instead of 52? It surprised me, Your Honor, that that's not what the prosecutor did in this case. Said, okay, defense, you're saying she's an Indian. You have committed yourself to that position to the district court. We're going to charge her under 1153. Now defend the case. I'm surprised that hasn't happened. She'd be stopped in that case from denying that she was an Indian? I believe so because she had represented to the court in pretrial filings pursuant to her motions to dismiss that I am an Indian. Which way does that cut? That hurts us, Your Honor, in that I'd like to be able to say you should reverse and the double jeopardy bars re-prosecution. But what we're saying is 1152 is a separate crime from 1153. She was convicted of a crime, 1152, that she is not guilty of, so this matter should be reversed, which exposes her to re-prosecution under 1153. And the best I can come up with is some sort of equitable estoppel that, given that the case agent knew she was an Indian, given his role as the tribal judge adjudicating her as a ward of the tribe, that the government should be somehow stopped from re-prosecuting the case. But you're not suggesting we can decide that in this case, are you? That would have to be in a future case. The estoppel issue, yes, would be remanded, and then we would raise that issue to the district court and perhaps be back here. But we would – unfortunately, double jeopardy doesn't end the case. Counsel, there is some suggestion in some very early cases, Henry is the one I've got in mind, that it's harmless error. Henry, Your Honor, if you read the decision carefully, is very distinct from this case. There, the indictment referenced section 1152, but it listed as the elements 1153's standards. So it was a reference in the code that was the error. You think that it was simply a Scribner's error? Perhaps. I don't know, but that's what it appears to be. Also, not only did the indictment list the 1153 elements, the jury was instructed under 1153, and the jury was instructed that defendant being an Indian is an element in the case. So we're dealing with apples and oranges. Not only do I believe Henry's been overruled by this Court's decisions in Bronshaw and James, but Henry is in opposite on the facts to this case here. I'd like to reserve the rest of my time for rebuttal. Thank you. We'll hear from the government. Ms. Hurd, you're here. Yes, Your Honor. You're on duty this morning. Yes, I am. I'm here for Mr. Richter, who was the person who handled this case in the court below and wrote the appellate brief. In this case, it's sometimes difficult to keep 1152 and 1153 separate. But the reality is this is a case that was originally from the record, indicted under 1153, was presented to the grand jury, and that case was dismissed because they could not prove beyond reasonable doubt that she was an Indian person. And so it was reindicted under 1152 when it was discovered she was not enrolled and not considered to be an Indian person. It doesn't say anything about double jeopardy, does it? No, it does not. And then so we actually have a trial on 1152, and about three weeks before trial the defendant raised the ethnicity issue in several motions. One is alleging that the indictment was unclear, saying that it almost alleged she was an Indian and, therefore, she'd already been punished by the tribe, and so, therefore, the case should be dismissed. It wasn't this exact issue that we're here in court on today. But the exact issue, as framed in the defendant's briefs by Mr. Donahoe, was that he didn't have a quarrel with his obligation to produce evidence that she was an Indian person, and that's specifically in his brief. And so any arguments today that Hester somehow shifts a burden or isn't appropriate simply is not what he argued in the brief. And Hester does talk about the defendant shouldering the burden of producing evidence, not just ---- Yeah, but I'm looking at Hester now. Once the defendant properly raises the issue of his Indian status, then the ultimate burden of proof remains, of course, upon the government. Right. And there's also a quote in Hester that says the defendant, quote, shoulders the burden of producing evidence he is a member. And in this case, it is a factual dispute then. What the defendant says in his appellate brief is that his quarrel is Violet's belief that she did produce enough evidence to require that burden to shift back to the United States to prove that, in fact, she was not an Indian person. So he's not quarreling with the fact that he had to produce some evidence. And as the Court issued an order indicating they asked us to talk about what evidence, how much evidence must a defendant present to carry the burden of production on the affirmative defense. And the United States would suggest that that burden of production in a case such as this should be by a preponderance of the evidence, that the defendant should present enough evidence by a preponderance of the evidence that the burden would then shift back to the government. And in this case, there just simply wasn't enough. The Court found, as a factual matter, the evidence that was produced by her did not rise to the legal threshold to say that she was an Indian person. We're talking about two different tribes here. We're talking about the fact that her mother is enrolled, but enrolled in a different tribe. And there is a suggestion on the record that she's not eligible for enrollment. This is a woman who is in her 20s and has never been the subject of an enrollment, but two of the three children are. And there's also, again, a suggestion that that's because of the ethnic status of the father of those children, her spouse at the time, that they were enrolled because he was able to be enrolled. And so in this case, Judge Haddon looked at... Enrollment, of course, would be the easy thing to do. It would be a very nice, bright-line rule. But that's not what the cases seem to suggest, that it's sufficient but not necessary. Exactly. And, in fact, even eligibility for enrollment doesn't seem to be a prerequisite. That's correct. So it does appear to be sort of a socialization, how close can you come to political affiliation with the tribe. Exactly. And on those grounds, we do have evidence here that she has been treated as an Indian in the past by the tribe. We do have some evidence that she was committed to Indian services for mental health treatment in the early 90s and that the tribe handled her in that way. We have a record of an arrest that the tribal government treated her as an Indian under their criminal laws. That evidence was really never presented to the court during the finding phase in the trial. In the trial, if you look at the record, basically the United States presented their evidence about her assault on the child. And then there was some argument about what should happen next. And then the court found that the defendant needed to produce some evidence. So the evidence the defendant presented right then and there was this. I have some Chippewa blood. One-eighth, I believe, was on the record. I am not enrolled. I do not receive benefits. And I or her mother actually testified. It wasn't the defendant. Her mother testified that she had been born on a reservation and that she would camp or she would participate in a sweat and that she had Indian friends. That's the evidence. Right. She came forward later on on a motion under Rule 34 to show that she had been adjudicated as an Indian child in 1991 by the Fort Peck Tribal Court. But, in fact, the investigator, Mr. Boyd, had adjudicated her as an Indian child in 1991. The district court said that that evidence had been filed under the wrong motion, but the district court also said the proper evidence would not change the court's as to whether it would change here. Exactly. Because the court said, I've looked at that as well. I was talking about what the court considered at the time it made its ruling and said, this doesn't even go to the jury. And then the jury convicted her, and then we had the motion to arrest a judgment, which was responded to by the United States. And if you look at the excerpts of record that deal with that whole issue, starting at 227, which is the defendant's motion and allegations about the fact that the tribe had treated her as an Indian, and then you look at the dispositional order that follows it and look at the response by the United States, it's the United States' position in that response, and it continues today, that that still isn't enough evidence, that this was not enough, even by a preponderance of the evidence, which would be just a little more than half, that she was an Indian versus a non-Indian. Especially with regard to her children, the Indian Child Welfare Act does not require enrollment or that the parents be an Indian person, but that the child be an Indian person, because in this case, two of her three children were definitely Indian persons. You talked about the prior adjudication that she was an Indian in 1991. I don't know that I agree with that characterization that's been made in the defense brief, that she was an Indian person when she was an out-of-control teenager who got arrested and got sent for mental health treatment. I don't see anything in the order that indicates that they have made a finding under federal law, applying the federal statutes, that she is an Indian person. Certainly her mother was an Indian person, and from her mother's own testimony, it sounded like this was a child as a teenager who was somewhat out of control and had to be arrested and be taken away. And I don't think we can take anything more from that dispositional order than the fact that we have an enrolled mother living on the reservation with a child who is not enrolled, who is completely out of control and needs mental health treatment, and the tribe did something about it because she lived within their confines. It made her a ward of the tribal court for a short period of time, but it didn't make a finding under federal law that she was in fact an Indian person. And I think that's why the judge said, okay, fine, all of those things aside, it still wouldn't change my mind. Would she have benefits and be declared a ward of the tribal court without being a member of the tribe, or without being declared an Indian? Yes, I believe so, because she lives there and her mother is enrolled and sought the help of the law enforcement and the mental health providers in that case. The interesting kind of dilemma here in this one is, okay, if he wins and she should have been charged under 1153, then we go back and she's charged under 1153 and convicted. I mean, that's the suggestion at least. Maybe there's no prejudice. Is that what you're suggesting? No. In fact, there isn't any prejudice. And I think that the cases are clear, and I do not agree with the fact, the allegation that Henry has been overruled. It depends upon the burden of proof. Yes. So whereas it strikes me it is harmless if you go from 1153 to 1152, that it's not harmless going in the other direction? Well, it isn't, because 1153 has a specific requirement that it be an Indian person. Makes it part of the government's burden. Absolutely, from the very beginning. Same question. I asked your opposing counsel, would she be stopped if you brought, if you reindicted this case? Absolutely, because there is testimony on the record under oath from her mother saying, I believe she's an Indian person, and then some additional evidence. Are there reasons why you can't indict her at this point? There's no statute that's run? I would believe it probably would. Well, that would be a good question, because this is a high misdemeanor. Under 1153, assault on a child under the age of 16 is a high misdemeanor punishable by up to a year. And so I think it's possible, though I can't answer that with any specific authority. I mean, I think in this case it was to the government's credit that they recognized from the beginning that they had indicted her wrongfully. She was not an Indian person, and they wanted to make certain that they indicted her correctly, went back, and the court agreed and said. This is a funny way to write statutes, to have these two parallel statutes and put you in this kind of position. Can you indict under both statutes and just say we've got you under one or the other? No, because under 1153, you have to affirmatively allege and prove that she or he is an Indian person. And so I don't think the government can take the position in front of a grand jury to say, you know, our proof would be that she is an Indian person and then indict under 1153. At this point, what you really need is a change from Congress that just clarifies the whole thing, since everybody seems to be covered under one or the other. Exactly. And then there was going to be some Ninth Circuit case law in a case that has now been withdrawn. The opinion has, because there was some other language in there that was the subject of a petition for re-hearing. So we thought we had this settled, but apparently we're back to where we are again. Thank you, counsel. Thank you. Your time has expired. Mr. Rhodes, I'm very curious. Suppose she's re-indicted under 1153. What's her defense going to be? Your Honor, I don't have an answer to that question. I think we would try to argue some sort of equitable estoppel, the fact that Investigator Boyd was aware of her Indian status, aware that she was made a ward of the tribes and sat there while we raised this defense and didn't say anything. You can't now come back and say, no, she's not an Indian, therefore, there's the issue. I don't think, ethically, Your Honor, I would never make that argument. Well, ethically, but surely your position is that criminal, that estoppel doesn't apply in a criminal case, I would think. We would argue equitable estoppel. That's what I would argue. Yes. I would assume your position is not that, as to the defendant, that the defendant can be estopped in a criminal case. Perhaps that argument would be made, Your Honor. I would feel hard-pressed to make that myself. Okay. I want to... You would be in good company, by the way. Yeah. Yeah. Quickly, if I can make a few points. Several cases have held that 1153, the Indian status is an element. Bronshaw held that, Francisco, which I just provided to the Court before the hearings this morning, held that. The interracial status, in other words, the non-Indian on Indian crime, is a jury element, which we believe is a jurisdictional element of a Section 1152 action. Therefore, the argument that some facts weren't made known to the district court until after the verdict is irrelevant. We're challenging jurisdiction. The issue came up to the government whether or not our client received benefits reserved only to Indians. She did. She's been treated by Indian Health Service also. Can she qualify for Indian Health Services? Ms. Hurt says that she can qualify for Indian Health Services by virtue of her mother's status and by virtue of the fact that she lives on the reservation. I may be putting words in Ms. Hurt's mouth, but that she doesn't have to be an Indian in order to qualify for those services. Yeah. I don't know the legal answer to that, but my understanding is only Indians can get IHS services. It's hard to know. Yeah. And I live in a city in Montana. And at the local Indian Health Services, you have to be an Indian, but that's in a city in Montana, not on a reservation. You need to be made a ward of a tribe if you're not an Indian. Ms. Hurt said, yes, you can. Yeah. I actually spoke to somebody from the Native American Rights Fund about that question earlier this week, and they didn't know the answer. So I don't know the answer to that. I would point out that after this incident and the kids being removed from Ms. Bruce's custody and care, she was treated by the Spotted Bull Treatment Center on the Fort Peck Indian Reservation. She was also put into the Fort Peck Parenting Program. Two more programs that we believe would be reserved to Indians that she has been able to participate in. Thank you, Counselor. Your time has expired. Thank you, Your Honor. The case just argued will be submitted for decision, and we will now hear argument in National Court of Appeals.
judges: O'scannlain, Rymer, Bybee